Opinion issued June 26, 2003












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00449-CV




CONTINENTAL CASUALTY CO., Appellant
V.
FINA OIL & CHEMICAL CO., Appellee
* * *
FINA OIL & CHEMICAL CO., Appellant
V.
CONTINENTAL CASUALTY CO., Appellee
 

 
 
On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 97-54451A
 

 
 
O P I N I O N
           Continental Casualty Company (Continental) appeals the trial court’s judgment
declaring that Fina Oil & Chemical Company (Fina) was an additional insured under a
commercial general liability insurance policy issued by Continental to A&B Builders, Inc.
(A&B) and awarding damages to Fina for its claim of breach of contract. Continental
specifically argues that (1) Fina was not an additional insured and (2) if Fina was an
additional insured, coverage was excluded for Fina’s claims. Fina appeals the trial court’s
determination that Continental did not waive its right to subrogation. We reverse the
judgment and render judgment that Fina take nothing.
BACKGROUND
           On August 12, 1997, A&B wrote a letter to Fina proposing to perform steel erection
for three buildings. The letter stated,
A&B Builders, Inc. is pleased to offer our proposal to furnish labor,
tools, material (not furnished by Fina), equipment, insurance and supervision
to complete steel erection for the above referenced buildings. . . . 

                      . . . .
 
We appreciate the opportunity to quote this work to Fina Oil &
Chemical and look forward to hearing from you in the near future. If you have
any questions or require additional information, please feel free to contact our
office. 

On that same date, Fina issued two purchase requisitions that, together, comprised the work
proposed by A&B in its quote. 
           On August 18, A&B’s insurance agent issued a certificate of insurance showing A&B
as the insured and Fina as the certificate holder. The certificate contained the following
disclaimer: “This certificate is issued as a matter of information only and confers no rights
upon the certificate holder. This certificate does not amend, extend or alter the coverage
afforded by the policies below.” Under the heading, “Additional Insured,” the certificate
provided:
FINA, its parent, subsidiaries and affiliated companies, and their
respective employees, officers and agents shall be named as additional insured
in each of Contractor’s policies, except Workers’ Compensation; however,
such extention [sic] of coverage shall not apply with respect to any obligations
for which FINA has specifically agreed to indemnify Contractor. 

The certificate also provided, under the heading, “Subrogation”: 
 
All policies shall be endorsed to provide that underwriters and
insurance companies of Contractor shall not have any right of subrogation
against FINA, its parent, subsidiaries and affiliated companies, and their
respective agents, employees, officers, invitees, servants, contractors,
subcontractors, underwriters and insurance companies. 

The Additional Insured Endorsement provided:
 
IF YOU ARE REQUIRED TO ADD ANOTHER PERSON OR ORGANIZATION AS AN
ADDITIONAL INSURED ON THIS POLICY UNDER A WRITTEN CONTRACT OR
AGREEMENT CURRENTLY IN EFFECT, OR BECOMING EFFECTIVE DURING THE
TERM OF THE POLICY, AND A CERTIFICATE OF INSURANCE HAS BEEN ISSUED,
THEN WHO IS AN INSURED (SECTION II) IS AMENDED TO INCLUDE AS AN
INSURED THAT PERSON, OR ORGANIZATION (CALLED “ADDITIONAL
INSURED”)[.]
 
THE INSURANCE FOR THAT ADDITIONAL INSURED IS LIMITED AS FOLLOWS: 
 
1.THAT PERSON, OR ORGANIZATION, IS ONLY AN ADDITIONAL INSURED
FOR ITS LIABIITY ARISING OUT OF PREMISES “YOU” OWN, RENT,
LEASE OR OCCUPY OR FOR “YOUR WORK” FOR OR ON BEHALF OF THE
ADDITIONAL INSURED; AND 
 
2.THE INSURANCE AFFORDED THE ADDITIONAL INSURED UNDER THIS
ENDORSEMENT DOES NOT APPLY TO (a) PUNITIVE OR EXEMPLARY
DAMAGES IN WHATEVER FORM ASSESSED AGAINST THE ADDITIONAL
INSURED AND/OR (b) ANY LIABILITY ARISING OUT OF ANY ACT, ERROR
OR OMISSION OF THE ADDITIONAL INSURED, OR ANY OF ITS
EMPLOYEES. 

             . . . .

The policy also contained the following endorsement providing for the waiver of transfer
rights of recovery against others: 
THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE
FOLLOWING: 
 
COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
 
NAME OF PERSON OR ORGANIZATION:“ANY PERSON OR ORGANIZATION
WITH WHOM YOU AGREE IN
WRITING TO WAIVE YOUR RIGHT
TO RECOVER AGAINST THEM. YOU
MUST AGREE TO THIS WAIVER
PRIOR TO THE DATE OF THE LOSS.”

             . . . . 
 
WE WAIVE ANY RIGHT OF RECOVERY WE MAY HAVE AGAINST THE PERSON
OR ORGANIZATION SHOWN IN THE SCHEDULE BECAUSE OF PAYMENTS WE
MAKE FOR INJURY OR DAMAGE ARISING OUT OF “YOUR WORK” DONE UNDER
A CONTRACT WITH THAT PERSON OR ORGANIZATION. THE WAIVER APPLIES
ONLY TO THE PERSON OR ORGANIZATION SHOWN IN THE SCHEDULE. 

           On August 22 and 25, Fina issued two purchase orders, showing A&B as the vendor,
for the proposed work. The reverse side of the purchase orders contained terms and
conditions of the sale. These terms and conditions made no reference to the provision of
insurance by the seller to the buyer. 
           On August 14, 1997, Larry Wisdom, an employee of A&B, was injured when a load
of steel beams, which was being unloaded on the Fina work site, fell. Wisdom sued Fina and
two other corporations who were involved in the work, alleging negligence. Specifically,
Wisdom alleged that Fina was negligent in (1) failing to supervise properly, (2) issuing a
permit to unload unbanded steel with a forklift, (3) failing to supply a cherry picker for
unloading the unbanded steel, (4) rushing the unloading process, (5) failing to supply a safe
workplace, and (6) allowing an unsafe activity on its premises. Wisdom did not sue A&B,
his employer, through whom he was receiving worker’s compensation benefits. 
           A&B was insured by Continental under several policies, including worker’s
compensation insurance and commercial general liability insurance. As the insurer,
Continental paid medical expenses and wage benefits to Wisdom. In August 1999, after
learning of Wisdom’s lawsuit, Continental filed a petition in intervention, asserting a lien in
the amount of $107,979.04 on the first monies paid to Wisdom, stating that Wisdom
continued to receive medical treatment and wage benefits, and seeking judgment of at least
$107,979.04. Four days later, counsel for Fina sent a letter to A&B, with a copy to
Continental, demanding a defense and indemnity under the terms of the certificate of
insurance. On September 16, 1999, Fina sent a letter by fax to Continental, with a copy to
A&B, reiterating Fina’s demand for a defense and indemnity. 
           Fina filed a counterclaim to Continental’s petition in intervention, alleging that Fina
was an additional insured under A&B’s insurance policies and asserting that Continental had
breached its duties under the policies by refusing to defend and indemnify Fina and by
seeking to enforce a lien against Fina for benefits paid to Wisdom. Continental generally
denied Fina’s allegations. Both parties filed motions for summary judgment. Continental
contended that Fina was not an additional insured under A&B’s insurance policies and that
Continental did not waive its subrogation rights. Fina argued that it was an additional
insured and was entitled to a defense and indemnification and that Continental waived its
subrogation rights. The trial court granted both motions in part, declaring that Fina was an
additional insured under the policy on the date of Wisdom’s accident and that Continental
did not waive its subrogation rights. Meanwhile, Fina and the two other defendants in the
underlying lawsuit settled with Wisdom. Fina paid $115,000, and the other defendants paid
a total of $122,500. 
           After the trial court granted the partial summary judgments, the court granted
Continental’s unopposed motion to sever the breach-of-contract issues from the rest of the
case. The issue of attorney’s fees relating to the breach-of-contract issues was tried to the
court. The parties stipulated that Fina’s costs of defense, in the amount of $56,484.75,
relating to Wisdom’s cause of action were reasonable and necessary. The trial court awarded
Fina $166,269.44 as attorney’s fees and expenses for the trial of the breach-of-contract claim,
$115,000 for settlement of Wisdom’s claim, and $56,484.75 for costs of defense of
Wisdom’s claim. The total award to Fina against Continental, including prejudgment
interest, was $365,751.61. 
DISCUSSION
I.        Standard of Review
           Insurance policies are controlled by rules of interpretation and construction applicable
to contracts generally. Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520
(Tex. 1995). The primary concern of a court in construing a written contract is to ascertain
the true intent of the parties as expressed in the instrument. Id. Terms in contracts are given
their plain, ordinary, and generally accepted meaning unless the contract itself shows that
particular definitions are used to replace that meaning. W. Reserve Life Ins. v. Meadows, 261
S.W.2d 554, 557 (Tex. 1953). If a written contract is so worded that it can be given a
definite or certain legal meaning, it is not ambiguous. Nat’l Union Fire, 907 S.W.2d at 520. 
The interpretation of an unambiguous contract is a question of law for the court. Perry v.
Houston Indep. Sch. Dist., 902 S.W.2d 544, 547 (Tex. App.—Houston [1st Dist.] 1995, writ
dism’d w.o.j.). If an insurance policy is ambiguous, however, it will be interpreted in favor
of the insured. Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997). 
II.      Continental’s Appeal
           A.       Additional Insured
           In its first issue, Continental contends that Fina was not an additional insured as
defined by the additional-insured endorsement because there was no written contract or
agreement requiring A&B to add Fina as an additional insured. Fina responds that its written
bid dated August 12, 1997, which proposed to “furnish . . . insurance,” became the written
contract when it was accepted by Fina. Fina argues that a written bid that is orally accepted
and acted upon constitutes an agreement in writing and that, when a contract has been
reduced to writing, is signed by one of the parties, and is ratified and accepted by both
parties, it is treated as a written instrument that is binding on both parties. Fina cites J.H.
Beall v. Hardwicke-Etter Co., 460 S.W.2d 516 (Tex. Civ. App.—Waco 1970, writ dism’d
w.o.j.), Taylor Construction Co. v. Clynch, 196 S.W.2d 700 (Tex. Civ. App.—Amarillo
1946, no writ), and Salisbury v. Taylor, 5 S.W.2d 874 (Tex. Civ. App.—Austin 1928, no
writ) to support this argument. 
           We do not disagree with Fina’s statement of the law; however, that principle does not
apply to the present case. As between Fina and A&B, the parties could form a written
contract, a parol contract, or a combination of the two. The issue in this case is not merely
whether there was a contract between Fina and A&B, but whether that contract complied
with the contract of insurance between A&B and Continental. 
           To be legally binding, a contract must be sufficiently definite in its terms so that a
court can understand the parties’ obligations. T.O. Stanley Boot Co. v. Bank of El Paso, 847
S.W.2d 218, 221 (Tex. 1992). The parties must agree upon the material terms of the contract
for it to be enforceable. Id. In the present case, a bid to “furnish . . . insurance,” with
nothing more, cannot be said to embody the material terms of a contract to provide that
insurance. 
           The additional-insured endorsement conditioned the amendment of A&B’s policy
regarding who was an insured on (1) a requirement under a written contract to add another
person or organization as an additional insured and (2) the issuance of a certificate of
insurance listing that person or organization as an additional insured. It may be true, as
argued by Fina, that both Fina and A&B understood that Fina would become an additional
insured under A&B’s policy and that A&B requested the issuance of a certificate of
insurance on August 12. However, neither A&B’s proposal nor Fina’s purchase requisitions
or purchase orders specifically require adding Fina as an additional insured,


 and the
certificate of insurance was not issued until August 18, 1997. Accordingly, we hold that Fina
was not an additional insured under A&B’s policy on August 14, 1997, the date of Wisdom’s
injury. 
           We sustain Continental’s first issue. 
           B.       Exclusions
           In its second issue, Continental contends that, even if Fina was an additional insured
on August 14, 1997, coverage for Wisdom’s injury was excluded under the policy’s
exclusionary language. Continental argues that the first of two limitations paragraphs
extended coverage to Fina for liability arising out of premises that A&B occupied or for
A&B’s work for Fina, but that the second paragraph withheld coverage from Fina for liability
arising out of any act, error, or omission of Fina. In other words, Continental’s position is
that the policy excluded coverage for Fina’s own negligence.


 
           An insurer’s duty to defend is determined under the “eight-corners” rule by looking
to the allegations in the pleadings and the language of the insurance policy. Nat’l Union Fire
Ins. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). In applying the
eight-corners rule, a court must give the allegations in the petition a liberal interpretation. 
Id. Generally, the insurer has a duty to defend if the petition potentially states a cause of
action within the policy coverage. Id. 
           In this case, the plain language of the exclusion provided that the additional-insured
endorsement “does not apply to . . . any liability arising out of any act, error or omission of
the additional insured, or any of its employees.” Wisdom’s petition did not allege any acts
of negligence or any tortious acts or omissions of A&B.


 The only allegation that connected
the alleged negligence of Fina to the premises occupied by A&B or A&B’s work for or on
behalf of Fina was the allegation that Fina was negligent in “demanding that A&B proceed
to unload unbanded steel without proper equipment.” Thus, although Fina’s liability arose
out of the premises occupied by A&B, Fina’s liability also arose solely out of the acts, errors,
or omissions of Fina or its employees. Therefore, even if Fina was an additional insured at
the time of the accident, coverage under that endorsement did not apply. 
           We sustain Continental’s second issue. 
           Because we have held that Fina was not an additional insured under A&B’s
commercial general liability policy on August 14, 1997 and have, alternatively, determined
that, even if Fina was an additional insured, it was not covered by the policy because of the
exclusion for liability arising from the additional insured’s own negligence, we need not
consider Continental’s remaining two issues regarding whether Continental’s duty to
indemnify was established as a matter of law and whether Fina was required to segregate its
attorney’s fees. 
II.      Fina’s Appeal
           In its second issue, Fina contends that the trial court erred in rendering partial 
summary judgment that Continental did not waive its right of subrogation against Fina. Fina
recognizes that the endorsement that provided for waiver of subrogation rights required that
the waiver be in writing. Fina argues that “substantial summary judgment evidence” of an
agreement in writing to waive subrogation was shown by the written bid by A&B to Fina
proposing to furnish insurance, along with A&B’s awareness that Fina required that
subrogation rights be waived, and that the reference to insurance in the bid was “intended to
reflect” the agreement to waive subrogation. 
           Fina’s own argument shows that there was no agreement in writing to waive
subrogation. A&B’s bid made a single mention of insurance, with no specific details or
terms. The bid made no reference at all to subrogation or a waiver. Because there was no
language that created an ambiguity in the bid, the awareness and intention of A&B and Fina
are irrelevant. 
           Fina also argues that subrogation of an insurer against its insured has been rejected
in Texas, citing Texas Association of Counties County Government Risk Management Pool
v. Matagorda County, 52 S.W.3d 128 (Tex. 2000). Texas Association of Counties does not
apply to this case. The subrogation sought by Continental is in connection with moneys paid
on Wisdom’s worker’s compensation claim. Fina was specifically excluded from coverage
as an additional insured on A&B’s worker’s compensation insurance policy. Therefore,
Continental was not seeking subrogation against its insured. Furthermore, the waiver
endorsement, by its own terms, applied only to commercial general liability insurance and
owners and contractors protective liability insurance. Accordingly, the trial court did not err
in granting Continental’s motion for partial summary judgment on the ground that
Continental did not waive subrogation.
           We overrule Fina’s second issue.
           Because we have sustained Continental’s first two issues, we need not reach Fina’s
first issue, which challenges the trial court’s denial of Fina’s pre-tender defense costs. 

CONCLUSION
           We reverse the judgment and render judgment that Fina take nothing by way of its suit
against Continental. 
 
 
                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Justices Hedges, Nuchia, and Keyes.

Justice Keyes concurring.